IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN COLDWELL, | CASE NO. CV-F-07-1131 LJO SMS |
| Plaintiff, | **ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| COUNTY OF FRESNO, et. al, | |
| Defendant. | |

By notice filed on December 19, 2008, Plaintiffs Martin Coldwell, Stephen Lake, Robert Turner, and David Durbin move for summary judgment on the grounds that there is no genuine issue of disputed fact pursuant to Fed.R.Civ.P 56. Defendants Richard Pierce, Rick Ko, Kevin Wiens, Bertsch, Gallegos, Asselin, and the County of Fresno filed an opposition to the motion on January 7, 2009. Plaintiffs filed a reply on January 22, 2009. The Court thereafter took the motion under submission and vacated the hearing date pursuant to Local Rule 78-230(h). Having considered the moving papers, the opposition, and the reply, as well as the Court's file, the Court issues the following order.

**FACTUAL BACKGROUND**

The Fresno County Sheriff's Department ran an undercover operation in 2002, referred to as "Protect Our Children" operation (the "Operation"), to address complaints of lewd conduct occurring near the restrooms located in Roeding Park in Central Fresno. The Operation used officers as decoys. Plaintiffs allege that the decoy officers would make eye contact with males in the park, approach solitary men, and suggest sexual relations in the restrooms. Approximately 35 arrests stemmed from the undercover operation. Martin Coldwell was arrested for a violation of Penal Code Section 647(a) based on conduct characterized as "solicitation." Others were arrested under the same criminal statute for

"engaging" in lewd conduct. Some of those arrested for violation of Penal Code Section 647(a) were arrested at the scene, in Roeding Park. Most were arrested within two to three months pursuant to warrants. Some arrests were covered by the media, some were not. Different officers acted as decoys in connection with the various arrests.

Plaintiffs Robert Turner, Martin Coldwell and Stephen Lake were arrested pursuant to *Ramey*[1] warrants issued by Superior Court judges. David Durbin was arrested at the scene pursuant to the authority of Penal Code Section 836. Charges were filed against all plaintiffs by the District Attorney's Office. Coldwell plead nolo contendere to the charge of lewd conduct. Lake was convicted by a jury of violation of 647(a), which conviction was later reversed by the Appellate Panel of the Fresno County Superior Court. Robert Turner went to trial where a hung jury resulted in a mistrial. David Durbin's case was dismissed on November 1, 2007 due to discovery issues.[2]

Plaintiff Martin Coldwell, Stephen Lake, Robert Turner, and David Durbin allege they were falsely arrested by undercover sheriff deputies for soliciting sexual conduct in Roeding Park. They also allege the arrests were discriminatory in that the Sheriff's Department only made arrests for non-monetary male/male sexual solicitations and never arrested any one for making non-monetary male/female sexual solicitations. Plaintiffs allege that the Fresno Sheriff's Department has a policy of discriminating against male/male public non-monetary sexual solicitations. Plaintiffs further allege the Fresno Sheriff's Department failed to adequately train its deputies so as to avoid making false and discriminatory arrests.

In this motion, plaintiffs move for summary judgment on their *Monell* claim for failure to adequately train the officers. Plaintiffs also move for summary judgment on their *Monell* claims of false arrest without probable cause. Finally, plaintiffs move for summary judgment for discriminatory arrest in violation of the Equal Protection clause in the 14th Amendment. Plaintiff allege that the undisputed facts support summary judgment on their 1983 claim for unreasonable seizure based on lack of probable

---

[1] *People v. Ramey*, 16 Cal.3d 263, 276, 127 Cal.Rptr. 629, 637 (1976) (warrantless arrests within the home are per se unreasonable in the absence of exigent circumstances).

[2] The status of the prosecutions was provided in Defendants' opposition. (See Doc. 38, Opposition p.2.) Neither plaintiff nor defendant provided evidence of the prosecutions.

2

cause for arrest. (Doc. 35, Moving papers p.13.) Plaintiffs allege claims a violation of equal protection in that they have been discriminatorily prosecuted because the sheriff's department never made an arrest for male/female lewd conduct, despite such conduct occurring. (Doc. 35, Moving papers p.13-14.) Plaintiffs argue that the Sheriff's department never used decoys to target male/female non-monetary sexual conduct. (Doc. 35, Moving papers p.17.) Plaintiffs argue that their arrest are invidious because the arrests bear no relationship to legitimate law enforcement objectives. (Doc. 35, Moving papers p. 21.)

Defendants contend that officers had probable cause to arrest Plaintiffs and that the arrest or prosecution of any person for violation of Penal Code §647(a), (d), was not discriminatory, did not result from any custom or practice intended to disparately impact homosexuals, and was not based on any arbitrary classification, such as homosexuality, which would violate equal protection.

## ANALYSIS & DISCUSSION

**A.   Summary Judgment Standard**

Initially, it is the moving party's burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56( c); *British Airways Board v. Boeing Co.,* 585 F.2d 946, 951 (9th Cir. 1978), *cert. denied*, 440 U.S. 981 (1979). Rule 56(e) requires the party against whom the motion is made to "set forth specific facts showing that there is a genuine issue for trial." Absent such a showing, a properly supported motion for summary judgment may be granted if the court finds it appropriate." *Nilsson, Robbins, et al v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the nonmoving party must produce to defeat the summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)*; T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.

The court, however, has no duty to search the record, *sua sponte*, for some genuine issue of material fact; the court may rely entirely on the evidence of the moving party. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). If the motion is based on deposition testimony, the court may rely exclusively on portions highlighted by the moving party and need not comb the deposition to discover conflicting testimony. *Guarino v. Brookfield Township Trustees, supra*, 980 F.2d at 403. The court is not obligated to consider matters not specifically brought to its attention. Thus, it is immaterial that helpful evidence may be located somewhere in the record. The opposition must designate and reference specific triable facts. *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (DC Cir. 1988). Inferences drawn from the evidence, however, must be viewed in the light most favorable to the nonmoving party. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2077 (1992).

**B.     When Plaintiff is the Moving Party**

When plaintiffs are the moving parties, plaintiffs' burden of proof is: (1) to demonstrate affirmatively (by admissible evidence) that there is no genuine issue of material fact as to each element of its claim for relief, entitling it to judgment as a matter of law; and (2) to demonstrate the lack of any genuine issue of material fact as to affirmative defenses asserted by the defendant. Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed Civ. Pro. Before Trial,* §14:140 (The Rutter Group 2008). According to this practice guide, plaintiff must establish not only the elements of its claim, by undisputed material facts, but also that the defendants' affirmative defenses do not raise triable issues of fact.

The parties did not cite to any controlling case authority on plaintiff's burden of proof. *See Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076 (D.C.Del.1990) (the Court was not precluded from granting summary judgment for plaintiff by the fact that affirmative defenses, which were not addressed by either party in motions for summary judgment, were preserved in the pleadings; defendants failed to point to any specific facts that would raise genuine dispute as to affirmative defenses, on which they would have the burden of proof at trial), *affirmed*, 932 F.2d 959 (3rd Cir. 1991); *Kouba v. Allstate Ins. Co.*, 523 F.Supp. 148, 160 (D.C.Cal.1981) (plaintiff moved for partial summary judgment on one of defendant's affirmative defenses - "A plaintiff may, of course, test the sufficiency of a defense by motion for summary judgment [citations omitted]. Where plaintiff seeks summary judgment on the question of liability, the plaintiff must initiate the inquiry by demonstrating that there is no material fact in issue as to the affirmative defense and that it is insufficient as a matter of law"), *rev'd on other grounds*, 691 F.2d 873 (9th Cir.1982).

This Court, however, need not resolve whether plaintiff's burden includes disproof of each affirmative defense, or merely proof of its own *prima facie* case. Defendant has raised issues of fact as to plaintiffs' claims.

**C.     Municipal Liability under *Monell***

Plaintiff filed a civil rights, 42 U.S.C. § 1983 ("Section 1983") action, alleging Fourth and Fourteenth violations of the United States Constitution. Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights."

*Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004).

### 1. Standards for Municipality Liability Under *Monell*

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991). "[A] local government may not be sued for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or actions may fairly be said to represent official policy, includes the injury that the government as an entity is responsible under §1983." *Monell,* at 98 S.Ct. 2038. Thus, the County cannot be liable for the conduct of the officers solely on the basis of respondeat superior. Plaintiffs must show that the officers conduct represents County policy. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989) (inadequate police medical training representing a city policy may serve as basis for §1983 case); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986).

One way to show a municipality is liable for violating a constitutional right is to show it acted pursuant to a policy, practice or custom to intentionally deprive plaintiff of a federally protected right. "Only if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). "[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018); *see Rizzo v. Goode*, 423 U.S. 362, 370-377, 96 S.Ct. 598 (1976) (general allegation of administrative negligence fails to state a constitutional claim cognizable under section 1983). "The existence of a policy, without more, is insufficient to trigger local government liability under section 1983." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). A "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan County Commissioners v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997). A plaintiff must demonstrate that a defendant's policy was "closely related to the ultimate injury." *City of Canton*, 489 U.S. at 391, 109 S.Ct. at 1206.

A second way to hold a local government entity liable for failing to act to preserve a constitutional right is for a plaintiff to demonstrate that the official policy evidences a deliberate indifference to plaintiff's constitutional rights. *Oviatt*, 954 F.2d at 1477; *See Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002) (setting forth the "two paths" to municipal liability), *cert. denied,* 537 U.S. 1106 (2003). Such indifference arises when the need for more or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1205; *Oviatt*, 954 F.2d at 1478. A municipality's failure to train may create liability where plaintiff shows (1) he was deprived of a constitutional right, (2) the County had a training policy that amounts to deliberate indifference to the constitutional rights of the persons' with whom its police officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the County properly trained those officers. *See Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001); *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008) (deliberate indifference is a high burden laid out in *Canton v. Harris*.)

**2.   Failure to Adequately Train**

Plaintiffs allege that the officers were inadequately trained as to the elements of lewd conduct. Plaintiffs argue that the officers were not trained that a third person must be present, who may be offended, before a crime of lewd conduct has been committed. Plaintiffs argue that using decoys leads the suspect to reasonably believe that the conduct is not likely to offend the observer. (Doc. 35, Moving papers p. 4.) Plaintiffs argue that it is "negligence per se" for the County to conduct a decoy operation without training their officers in the necessary elements of the crime of lewd conduct. (Doc. 35, Moving papers p. 4.)

Here, defendants have raised issues of fact as to whether the officers were adequately trained. *See Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (the County had a training policy that amounts to deliberate indifference to the constitutional rights of the persons' with whom its police officers are likely to come into contact). Sergeant Ko supervised the undercover Operation at Roeding Park. Sergeant Ko was familiar with the elements of the crime of lewd conduct from his experience and training, and from his discussion with two District Attorneys, as well as others. He instructed his

1  undercover officers that the crime required lewd conduct occurring within the presence of others. (Doc.
2  38-9, Decl. Ko ¶2-3.) Officers Asselin, Wiens and Ko were aware that an element of the crime was the
3  possible presence of someone who might be offended by the conduct. (Doc. 38-9, Ko Decl. ¶3; Doc.
4  38-10, Asselin Decl. ¶5; Doc. 38-12 Wiens Decl. ¶4.) Thus, the evidence shows that the officers were
5  aware that an element to the offense was the presence of a third party. In addition, defendants represent
6  evidence that the officers involved in the operation received instruction in the law prohibit harassment
7  and discrimination based upon sexual orientation. (Doc. 38-9, 38-12, 38-10, respectively, Ko Decl. ¶7;
8  Wiens Decl. ¶9, and Asselin Decl. ¶4.) An inference a reasonable jury could conclude form this
9  evidence is that the officers and the County did not target homosexual activity.

10     Further, the officers engaged in the undercover operation are POST certified. California's Peace
11 Officer Standards and Training ("POST") regulations, are promulgated under California Penal Code §
12 13510. These rules establish "minimum standards for training of police officers and other peace officers
13 in California." See Cal.Penal Code § 13510(a). Officer Asselin testified he had received 771 hour Basic
14 POST training and possesses POST basic, intermediate and advanced certificates. (Asselin Decl. ¶3.)
15 Officer Asselin testified he also has been to vice investigation training, has in-service training, has
16 reviewed old reports on lewd conduct and was knowledgeable about the County's policy against
17 discrimination and harassment based upon sexual orientation. (Doc. 38-10, Asselin Decl. ¶3.) Officer
18 Wiens similarly testifies. He has been POST training, including undercover operations, and has POST
19 Basic and Intermediate certificates. He has received in service training and participated in undercover
20 operations for investigation of lewd acts on more than 25 occasions. (Doc. 38-12, Weins Decl. ¶2.)
21 Thus, the evidence suggests a level of training which is consistent with adequate training.

22     Plaintiff argues that the POST training was inadequate. (Doc. 41, Reply Brief p. 4.) Here,
23 however, there is a factual dispute as to the training of the officers. Given that they received POST
24 training, their supervisor knew of the elements of lewd conduct and so instructed the officers on the
25 elements, defendants have raised issues of fact. A reasonable jury could conclude from the evidence
26 currently before the Court that the officers were trained in the elements of the crime of lewd conduct.

27     **3.     Probable Cause for Arrest**

28     Plaintiffs argue that their arrests were without probable cause because the decoy officers

"engaged in enticing conduct designed to gain the confidence of suspects and to assure them that they (the decoys) were not likely to be offended by sexual conduct in their presence." (Doc. 35, Moving Papers p. 18.) Plaintiffs argue that the element of lewd conduct of "presence of a person likely to be offended" can never occur in the decoy operation because the decoy affirmatively engages the suspect and gains the confidence of the suspect and therefore cannot be offended. (Doc. 41, Reply Brief, p.4.)

Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime. *Dubner v. City and County of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001). Probable cause to arrest exists when "officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir.2007) (*citing Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)), *cert. denied*, 128 S.Ct 335 (2007). Courts look to "the collective knowledge of all the officers involved in the criminal investigation." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir.2007) (citation and quotation marks omitted). Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008).

Defendants have raised an issue of fact as to whether probable cause existed for the plaintiffs' arrests. First, defendants present evidence that none of the named defendants made the arrests of any of the plaintiffs. The crime reports were prepared by Deputy Kevin Wiens in connection with the arrests of Martin Coldwell, Robert Turner, and David Durbin. David Durbin was arrested without a warrant at the Roeding Park. Officer Asselin prepared the crime report in connection with the arrest of Stephen Lake. Plaintiffs do not present any facts to dispute defendant's evidence that Officers Wiens and Asselin accurately reported their observations. (Wiens Decl. ¶7; Asselin Decl. ¶6.)

The dispute, from plaintiffs view, centers on whether the presence of the decoy officers negated an element of the crime of lewd conduct such that plaintiffs should not have been arrested. Plaintiffs argue that the presence of the decoys negated the element that someone would be offended by the conduct. The Court need not address at this point the applicable element of the crime because the disputed evidence shows that the decoy officers knew during the Operation that "the presence of a third

9

party who might be offended by the conduct" was required. (Asselin Decl. ¶5, Wiens Decl. ¶4.) The facts presented by defendants show that lewd conduct was conducted in public, with potentially other persons present. The Operation was initially undertaken to discourage or eliminate lewd conduct occurring in the part in and rest rooms, in areas near where children frequented. For instance, defendant Wiens testified that plaintiff Coldwell unzipped his pants while in the open next to a park roadway, near where people were located. (Doc. 38-11, Wiens Decl. ¶10.) Defendant Asselin testified that plaintiff Lake asked to have sex in the park, where families were located. (Doc. 38-10, Asselin Decl. ¶7.) The evidence raises issues of fact because the decoy, himself, is not the person "likely to be offended." The person likely to be offended is inferred from the totality of the circumstances that the purported lewd conduct was occurring in the park, where families are located and where potential third persons could view the conduct. *See People v. Lake*, 156 Cal.App.4th Supp. 1, 9, 67 Cal.Rptr.3d 452, 458 (2007) (the court finds the statute requires the People prove beyond a reasonable doubt that the defendant knew or reasonably should have known that someone was likely to be present who could be offended by the requested conduct.) Probable cause is a question of fact because defendants present evidence of the families and other persons in the park. Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury. *Harper v. City of Los Angeles,* 533 F.3d 1010, 1022 (9th Cir. 2008) (conclusive evidence of guilt is of course not necessary to establish probable cause.)

   **4.** **Qualified Immunity**

  Defendants also argue that summary judgment should be denied because of their qualified immunity defense. The deputies contend that they are entitled to qualified immunity in that they reasonably believed their conduct was constitutionally permissible.

  Qualified immunity protects section 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004). The "heart of qualified immunity is that it spares the defendant from having to go forward with an inquiry into the merits of the case. Instead, the threshold inquiry is whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established." *Kelley v. Borg*, 60 F.3d 664,

666 (9th Cir. 1995).

The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991). The Ninth Circuit has explained:

> Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the qualified immunity analysis is "to consider the materials submitted in support of, and in opposition to, summary judgment in order to decide **whether a constitutional right would be violated** if all facts are viewed in favor of the party opposing summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001). "If no constitutional violation is shown, the inquiry ends." *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003). On the other hand, if "the parties' submissions" create a triable issue of whether a constitutional violation occurred, the second question is "**whether the right was clearly established**." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

*Squaw Valley*, 375 F.3d at 943 (bold added).

The "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987). "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted under clearly established standards." *Saucier v. Katz*, 533 U.S. 194, 208, 121 S.Ct. 2151 (2001). "If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 599 (2004).

"If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202, 121 S.Ct. at 2156-2157. However, determination of qualified immunity on summary judgment/adjudication is improper if there are disputes "as to the facts and circumstances." *See Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1147, n. 10 (9th Cir.), *cert. denied*, 519 U.S. 1009, 117 S.Ct. 514 (1996).

This Court has not been asked to decide whether qualified immunity exists for the officers in this

case. Defendants are not the moving parties. Rather, defendants raise qualified immunity as an affirmative defense. Plaintiff, therefore, had the burden of negating the elements of the affirmative defense. Plaintiff failed to present evidence which negates the affirmative defense. Accordingly, issues of fact exist as to the officers' immunity.

D.  **Discriminatory Enforcement of the Lewd Conduct Statutes**

Plaintiffs contend that they are entitled to summary judgment on their claim for discriminatory enforcement/prosecution of the lewd conduct statute in violation of the Equal Protection Clause. (Doc. 35, Moving papers, p.13-17.) Plaintiff contend that defendants did not enforce or prosecute the lewd conduct statutes for male/female lewd conduct. (*Id.*) Plaintiffs argue that strict scrutiny applies to the statutes and enforcement procedures because sexual orientation is a "suspect class" under a California case.[3] For purposes of this motion, the Court will accept that sexual orientation is a suspect class.

1.  **Standards of Proof of Equal Protection Violations**

To state a viable Equal Protection claim under Section 1983, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause. *City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation*, 538 U.S. 188, 194, 123 S.Ct. 1389, 1394 (2003).

Official action will not be held unconstitutional solely because it results in a racially disproportionate impact. "Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination." *See Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2049 (1976) (holding that disparate impact is insufficient for an Equal Protection Clause violation claim). Indeed, proof of discriminatory intent is required to show that state action having a disparate impact violates the Equal Protection Clause. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

---

[3] Plaintiffs cite to "In Re Marriage Cases, S147999." Plaintiffs fail to provide a proper legal citation to the case, do not provide a table of authorities and do not include a copy of the case in the Exhibits, attached to the motion. It is not for this Court to search out the authorities upon which the plaintiffs rely.

"A facially neutral law ... warrants strict scrutiny only if it can be proved that the law was 'motivated by a racial purpose or object,' or if it is 'unexplainable on grounds other than race.' " *Hunt v. Cromartie*, 526 U.S. 541, 548, 119 S.Ct. 1545, 1549 (1999) (presented statistical and demographic evidence on racial impact of re-districting). "Analysis of an equal protection claim alleging an improper statutory classification involves two steps. Appellants must first show that the statute, either on its face or in the manner of its enforcement, results in members of a certain group being treated differently from other persons based on membership in that group." *United States v. Lopez-Flores*, 63 F.3d 1468, 1472 (9th Cir.1995), *cert. denied,* 516 U.S. 1982 (1996). "Second, if it is demonstrated that a cognizable class is treated differently, the court must analyze under the appropriate level of scrutiny whether the distinction made between the groups is justified." *Lopez-Flores*, 63 F.3d at 1472.

**2.  Decoys Target Homosexuals**

Plaintiffs argue that the use of decoys to target homosexual, but not heterosexual, conduct is discriminatory. (Doc. 35, Moving papers p. 17.) Plaintiffs argue that only male decoys were used and placed where males cruise looking for males. Female decoys were not used and placed where men and women were located.

Defendants, however, have raised issues of a fact as to use of male/female decoys. (Doc. 38, Opposition p.14.) Defendants present evidence that a female vice detective participated in the decoy operation, and entered women's restrooms to look for lewd conduct. (Doc. 38-12, Wiens Decl. ¶9.) Officer Andrea McCormick was assigned to the operation, drove around in the park to look for lewd conduct and entered bathrooms looking for lewd conduct. (*Id.*)  Defendants present evidence that the undercover officers where instructed to look for any lewd conduct, including male/female. (Doc. 38-9, Ko Decl. ¶6.)  The evidence provided is that the Operation was designed to uncover all lewd conduct in Roeding Park, not just male/male, but lewd conduct between females and males was not observed. (See e.g., Doc 38-9, Ko Decl. ¶6.)  Thus, defendants have presented issues of fact as to discriminatory enforcement of the lewd conduct laws in the Roeding Park operation.

Plaintiff argue that a statistical analysis of all arrests for a given period of time show discrimination. (Doc. 35, Moving papers p. 20.)  Plaintiffs, however, do not present the statistical evidence. Plaintiffs argue that none of the defendants made an arrest for male/female lewd conduct and

that a complaint log for Roeding Park showed examples of complaints of male/female lewd conduct.[4] (Doc. Stmt Undisputed Fact no. 29-3.) Defendants, however, have provided evidence that no male/female lewd conduct occurred in the park during the Operation. Thus, plaintiffs have failed to carry their burden and defendants have raised questions of fact.

### 3. Invidious Use of Decoys

Plaintiffs also argue that invidious discrimination occurred because the use of decoys. Plaintiffs argue that use of decoys to arrest for lewd conduct is invidious because the decoy attempts to gain the confidence of suspects. (Doc. 35, Moving Papers p. 22.) By using a decoy, plaintiff argues that the "observed conduct becomes legal." (Id.) Plaintiffs argue that the arrests are invidious in that they bear no relationship to legitimate law enforcement objectives.

Here, the plaintiffs' claim of discriminatory prosecution goes not to the nature of the charged offense, but to a defect of constitutional dimension in the initiation of the prosecution. *Baluyut v. Superior Court,* 12 Cal.4th 826, 831, 50 Cal.Rptr.2d 101, 104 (1996). To establish discriminatory enforcement, the plaintiff must prove: (1) 'that he has been deliberately singled out for prosecution on the basis of some invidious criterion'; and (2) that 'the prosecution would not have been pursued except for the discriminatory design of the prosecuting authorities.' " *Baluyut v. Superior Court*, 12 Cal.4th at 831, on which plaintiffs relies, holds that a defendant must show that "he has been deliberately singled out for prosecution on the basis of some invidious criterion" in order to prove discriminatory prosecution. Id. (citation and internal quotation marks omitted). That case defines "invidious" as "unrelated to legitimate law enforcement objectives." *Id.* at 6. Additionally, *Baluyut* states that "[u]nequal treatment which results simply from laxity of enforcement or which reflects a nonarbitrary basis for selective enforcement of a statute does not deny equal protection and is not constitutionally prohibited discriminatory enforcement."

Here, there is an issue of fact as to whether the decoy operation was unrelated to legitimate law enforcement objectives. Indeed, defendants present evidence that the Operation was related to law enforcement objectives. The Operation was intended to eradicate lewd conduct at Roeding Park near

---

[4] Plaintiffs do not attach the "complaint log" as evidence, but cites to "Transcript of the Murguia Motion." (Doc. 36, Stmt Undisputed Fact no 30.) No transcript is attached to any exhibit or otherwise identified. Accordingly, this evidence does not establish any statistical proof.

14

bathrooms and other facilities near park attractions frequented by children.  (Doc. 38-9, Ko Decl. ¶7.) Defendants present evidence that the operation was instituted to look for lewd conduct, regardless of the gender of the participants.  (Doc. 38-9, Ko Decl. ¶5.)  The undercover officers where not instructed to limit their investigation activities to males.  (*Id.*)  Lewd male/female conduct was not observed. (Id*.*) Accordingly, defendants have raised issues of a fact as to legitimate purpose for the law enforcement operation.

### 4. Decoys Luring Suspects into Lewd Conduct

Plaintiffs argues that using a decoy to lure a person into a crime rises to a level of constitutional violation. (Doc. 41, Reply p.1-3.)  Plaintiffs offer no authority for this proposition.  The purpose of the motion before the Court is to determine whether factual issues exist as to the claims presented by plaintiff.  As noted *infra*, this Court has found factual issues upon which a reasonable jury could decide in defendants' favor.   The court must not weigh the evidence and must draw all reasonable inferences in favor of the nonmoving party. *See Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir.1997).

### CONCLUSION

For all the foregoing reasons, the motion for summary judgment or in the alternative partial summary judgment is DENIED.

IT IS SO ORDERED.

**Dated:   January 26, 2009**             /s/ Lawrence J. O'Neill
                                          UNITED STATES DISTRICT JUDGE